## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

KRISTIN CRABTREE,          )
                                  )
               Plaintiff,       )
                                  )
         v.                )          No. 1:14 CV 29 DDN
                                  )
CAROLYN W. COLVIN,      )
Acting Commissioner of Social Security,  )
                                  )
               Defendant.     )

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Kristin Crabtree for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, plaintiff's claim is denied.

## I. BACKGROUND

Plaintiff Kristin Crabtree, born October 6, 1980, applied for Supplemental Security Income under Title XVI of the Social Security Act on July 14, 2011. (Tr. 141.) She alleged an onset date of disability of January 19, 2006, due to degenerative disc disease, fibromyalgia, Graves' disease, hepatitis C, bipolar disorder, anxiety, depression, hypertension, and an overactive thyroid. (Tr. 141, 181.) Plaintiff's claim was initially denied on December 1, 2011, and she filed a Request for Hearing on December 22, 2011. (Tr. 83-90.) The hearing was held before an Administrative Law Judge (ALJ) on January 10, 2013, who found that plaintiff was not disabled on February 8, 2013. (Tr. 7-20.) Plaintiff exhausted all of her administrative remedies after the Appeals Council denied her

Request for Review. (Tr. 1-6.) Therefore, the decision by the ALJ became the final decision of the defendant Commissioner.

## II. MEDICAL HISTORY

### A. Mental Health

On March 24, 2011, plaintiff was referred to Behavioral Health Care, and a psychological assessment was conducted by J. Long, Psy.D. Plaintiff reported mood swings, overwhelming feelings of anxiety, fatigue, depression, and lack of motivation. Plaintiff reported being diagnosed with bipolar disorder several years ago. During the clinical assessment, plaintiff's mood was described as anxious, but her attention was classified as good, her memory as intact, and her intellect as average. Dr. Long diagnosed plaintiff with Bipolar I disorder, citing her reported symptoms, as well as her past reported symptoms of inflated self-esteem, decreased need for sleep, distractibility, and increase in goal directed activities. Dr. Long reported that plaintiff's symptoms were causing clinically significant distress and impairment in functioning. (Tr. 271-74.)

On March 29, 2011, plaintiff returned to Behavioral Health Care and underwent a psychiatric evaluation conducted by Henry Kalir, M.D., Ph.D. Plaintiff's chief complaint was that her prescriptions for Cymbalta and Celexa, for her depression, were not working like they used to. Dr. Kalir diagnosed the patient with bipolar affective disorder as well as a personality disorder, and ruled out attention deficit hyperactivity disorder. Dr. Kalir discontinued plaintiff's Celexa, and prescribed Xanax, for anxiety, Topamax, to prevent seizures, Lamictal, for bipolar disorder, Abilify, for depression, and Cymbalta. (Tr. 281-83.)

On November 29, 2011, plaintiff returned to Behavioral Health Care and was examined by Jesse Rhoads, D.O. Plaintiff reported discontinuing Topamax and Lamictal, and she requested to be on fewer medications. In screening for plaintiff's bipolar disorder, Dr. Rhoads noted plaintiff had never experienced a manic or hypomanic episode. Plaintiff

complained of feelings of emptiness, chaotic interpersonal relationships, intense episodic dysphoria, or depression, and thoughts of death, but denied any ongoing major depression. Plaintiff stated that she had adult onset ADHD and would like Ritalin to help her study when she starts college. Dr. Rhoads was not convinced plaintiff suffered from ADHD, and also noted that plaintiff's thought process was linear, logical, and goal directed, and that her memory was intact. Due to plaintiff's reported symptoms and history, Dr. Rhoads diagnosed plaintiff with major depressive disorder, in remission, as well as a provisional borderline personality disorder. He noted plaintiff had not displayed any overt signs of character pathology during the examination. Dr. Rhoads reduced plaintiff's dosage of Xanax, increased her dosage of Cymbalta, and discontinued the Lamictal, Topamax, Abilify, and Celexa. (Tr. 456-57.)

On April 12, 2012, plaintiff returned to Behavioral Health Care and reported that she was doing fairly well with her medications, but was having some mild anxiety during the daytime. She was assessed by Richard Lucas, M.D., as generally stable with some mild continued mood symptoms. Dr. Lucas continued her Cymbalta and Xanax, and prescribed Abilify, which plaintiff had already restarted taking. (Tr. 455.)

### B. Physical Pain

On October 26, 2010, plaintiff sought treatment at St. John's-St. Francis hospital after experiencing knee pain resulting from a falling and twisting incident. An X-ray revealed there was no fracture, although plaintiff was noted to have tenderness and swelling around her knee. Plaintiff was prescribed hydrocodone, crutches, and a knee immobilizer, and she was discharged the same day. (Tr. 329-32.)

On January 5, 2011, an MRI of plaintiff's lumbar spine revealed a small paracentral disc protrusion, or bulge, at the L5-S1 level, which resulted in mild to moderate left lateral recess stenosis without central canal or neural foraminal stenosis. A disc desiccation on the L5-S1 level was found to be consistent with degenerative disc disease, but otherwise, the MRI of plaintiff's lumbar spine was noted to be unremarkable. (Tr. 267-68).

On February 17, 2011, plaintiff was referred to Ozarks Medical Center for her complaints of lower back and lower thoracic pain. During the examination, plaintiff was found to have intact motor strength in her legs, as well as a normal gait and no antalgic posturing. Plaintiff was found to have increased pain during extension, rotation, and lateral flexion of the lumbar spine. James DeVoe, M.D., the examining physician, opined that plaintiff's radicular symptoms were likely due to the L5-S1 disc protrusion, and involved the S1-L5 nerve roots. Plaintiff's hydrocodone and acetaminophen prescriptions were increased, and she was also prescribed tramadol, a pain reliever, and Gabapentin, which is used to treat nerve pain. (Tr. 262-64.)

On August 15, 2011, plaintiff sought treatment at Pain Management Clinic for reported constant, throbbing, and dull low back and hip pain, which she described as having an intensity of 7 on a 0-10 scale. Plaintiff was diagnosed with fibromyalgia, lumbar degenerative disc disease, and lumbar radiculitis. Plaintiff returned to Pain Management Clinic for follow-ups three more times: on October 18, 2011, December 8, 2011, and January 5, 2012. Plaintiff's condition during this time period reportedly improved, and she was described as "doing well" during her last visit. (Tr. 426, 527-28.)

On August 24, 2011, plaintiff sought emergency treatment from St. John's-St. Francis Hospital, after she reported having a seizure, and experiencing shakiness and fatigue. Plaintiff was described as having a flat affect, but was found to have not suffered an injury as a result of the reported seizure. After eating, plaintiff's condition considerably improved, and she was diagnosed with hypoglycemia. At discharge, plaintiff described her pain level as 0 out of 10. (Tr. 385-87.)

On November 30, 2011, a State agency physician, James Morgan, Ph.D., reviewed plaintiff's record and filled out a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique. Dr. Morgan concluded that while plaintiff had some limitations, she was capable of working one-step or two-step jobs on a sustained basis. (Tr. 429-42.)

On January 23, 2012, plaintiff was terminated from a pain management clinic in West Plains, Missouri. The record also indicates that plaintiff was terminated from a different pain management clinic in Poplar Bluff, Missouri, sometime in 2008. (Tr. 463.)

On June 6, 2012, plaintiff established care with Dr. Paul Rains, D.O., and underwent a medical evaluation. After examination, Dr. Rains noted all four of plaintiff's extremities showed good range of motion, and there was tenderness across plaintiff's lumbar back. Dr. Rains assessed plaintiff as having acute and chronic cervical, thoracic, and lumbar back pain and muscle spasm, acute hypertension, chronic anxiety, chronic depression, poor sleep patterns, degenerative disk disease to the lumbar back, fibromyalgia, and obesity. Dr. Rains prescribed Lorcet to treat plaintiff's pain. (Tr. 486-89.)

On August 21, 2012, Dr. Rains discontinued plaintiff's Xanax and Lorcet prescriptions. Dr. Rains appears to have discontinued the medication after it had been brought to his attention that plaintiff had been terminated from pain management. It was his policy not to write prescriptions for narcotic pain medications or nerve medications after a plaintiff had been terminated. (Tr. 463.) Dr. Rains prescribed plaintiff with Lisinopril, for high blood pressure, and continued her prescription of propranolol, a beta blocker. (Tr. 464.) Dr. Rains then attempted to schedule plaintiff with a pain management clinic in Poplar Bluff, but plaintiff was denied admission due to her past firings. (Tr. 463.)

On October 30, 2012, plaintiff sought emergency treatment from Poplar Bluff Regional Medical Center for reported drug withdrawals. During triage assessment, she showed no apparent distress, and was noted as behaving appropriately. Plaintiff also complained of chronic back pain, which at worst, reached 7 on a 1-10 scale. Plaintiff was diagnosed with drug abuse and was discharged to rehabilitation. (Tr. 499, 504.)

On November 7, 2012, plaintiff sought emergency treatment at Ozarks Medical Center, reporting to medical staff that she "had the shakes" after using methamphetamine. She displayed agitated and bizarre behavior, and was found to have abused amphetamines and narcotics. She was noted to possibly be in withdrawal from drug abuse, and it was

recommended that she be admitted for medical detoxification, but she refused. Her husband tried to convince her to stay, but she again refused and walked out against the medical advice of the staff. (Tr. 513, 518.)

### C. Plaintiff's Testimony at Administrative Law Judge Hearing

On January 10, 2013, plaintiff, with counsel present, testified by video at a hearing before Administrative Law Judge Timothy Stueve. (Tr. 33.) Plaintiff testified to the following. She experiences chronic low back pain caused by her degenerative disc disease and spinal nerve compression. (Tr. 40.) The pain prevents her from getting out of bed at times, and impacts her ability to sit, stand, or walk for extended periods. (Tr. 40, 43.) She stated she cannot lift anything, and has trouble picking up two gallons of milk. (Tr. 43, 45.) On a normal day, she can only stand for five minutes before needing to sit or lie down. (Tr. 44.) She has problems with her balance on a daily basis, and sometimes requires help in order to make her way around the house.

She has social anxiety, depression, bipolar disorder, and a borderline multiple personality disorder. Plaintiff also stated she has hepatitis, fibromyalgia, rheumatic arthritis, an unspecified blood clotting disorder, and Grave's disease (although she stated the Graves' disease was under control). (Tr. 40.) Because of her social anxiety she is unable to go shopping by herself, and she stated she has panic or anxiety attacks on a daily basis. She has trouble falling asleep, and is frequently fatigued. (Tr. 46.) Her fibromyalgia causes her pain all over her body, and her nerve compression causes constant pain in her legs and hips. She has manic episodes once a month which impair her memory for the duration of the episode, and the manic episodes last five days at the most. (Tr. 47-48.) Plaintiff relies on her mother to monitor her medications and to remind her to practice basic hygiene. (Tr. 48.)

Plaintiff stated she had been using drugs, mainly marijuana, up until a few months before the ALJ hearing. She denied taking methamphetamine before going to the emergency room on November 7, 2012, and explained that she had actually taken an

amphetamine diet pill. Plaintiff explained she had been discharged from pain management because she had been called in for a pill count and did not have the adequate amount of medicine. (Tr. 41-42.)

### D. Vocational Expert's Testimony at ALJ Hearing

The ALJ presented vocational expert (VE), Janice Hastert, with a hypothetical question. The hypothetical individual could lift twenty pounds occasionally, lift and carry ten pounds frequently, stand or walk for six hours and sit for up to six hours per eight hour workday, occasionally climb ramps or stairs but never ladders or ropes, frequently balance and occasionally stop, kneel, crouch and crawl, and could follow one to two step repetitive tasks. The VE stated that such person could work in a wide range of unskilled, light occupations, such as a garment bagger, folding machine operator, and a copy machine tender. (Tr. 50-51.)

The ALJ altered the hypothetical individual with the requirements that the individual could only work sedentary jobs, lift ten pounds occasionally, stand or walk for two hours and sit for up to six hours per eight hour workday, and has the same age, education, and work experience as plaintiff. The VE stated that such a person could perform multiple jobs, such as a lens inserter, an ampule sealer, and a springer machine tender. (Tr. 51-52.)

In response to questioning by plaintiff's counsel, the VE testified that if the hypothetical individual was limited to only occasionally handling bilaterally, then such an individual would be unable to sustain any of the jobs the VE had previously listed in her earlier testimony. The VE further testified that if the hypothetical individual required two additional fifteen minute breaks during the workday, required a sit/stand postural change every fifteen minutes, was off-task for up to twenty percent of their day, or was unable to accept basic levels of instruction or criticism, then such an individual would not be able to sustain unskilled work. (Tr. 52-53.)

# III. DECISION OF THE ALJ

On February 8, 2013, the ALJ issued a decision that plaintiff was not disabled. (Tr. 7-20.) At Step One of the prescribed regulatory decision-making scheme, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 29, 2011, the application date. At Step Two, the ALJ found that plaintiff's severe impairments were degenerative disc disease, obesity, bipolar disorder, opiate dependence, and cannabis abuse. (Tr. 12.)

At Step Three, the ALJ found that plaintiff had no impairment or combination of impairments that met or was medically equivalent to an impairment on the Commissioner's list of presumptively disabling impairments. (Tr. 13.)

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform sedentary work. The ALJ found that plaintiff can lift and carry ten pounds occasionally, stand or walk for two hours in an eight hour workday, perform only simple tasks, deal with only rare work place changes, can kneel, stoop and crouch only occasionally, and should avoid vibrations and unprotected machinery and heights. (Tr. 15.) At Step Four, the ALJ found plaintiff had no past relevant work. (Tr. 19.)

At Step Five, the ALJ found plaintiff capable of performing jobs existing in significant numbers in the national economy. (Id.)

# IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial

evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW). Id. § 416.920(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 416.920(a)(4)(v).

## V. DISCUSSION

Plaintiff argues: 1) the ALJ failed to derive a proper RFC when he did not provide a narrative statement linking the medical records to the RFC; 2) the record suggests a more limiting RFC than the ALJ's RFC finding indicates; 3) the ALJ failed to fully and

fairly develop the record; 4) the ALJ's failure to comply with HALLEX I-2-6-58 is reversible error.

## A. Sufficiency of Narrative Statement

Plaintiff argues that the ALJ erred when he formulated her RFC without properly linking it to medical evidence. Social Security Ruling 96-8p requires the ALJ to include in the decision "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. Plaintiff argues that the ALJ provided "only a selective discussion of the medical evidence" and completely failed to indicate how the limitations in the RFC were supported by medical evidence.

Before addressing plaintiff's argument, it is important to note that this court reviews for substance over form: "an arguable deficiency in opinion-writing technique does not require the court to set aside an administrative finding when that deficiency had no bearing on the outcome." Farringer v. Colvin, 969 F. Supp. 2d 1144, 1155-56 (D. Neb. 2013) (quoting Buckner v. Astrue, 646 F.3d 549, 559 (8th Cir. 2011)).

In this case, the ALJ provided more than a selective discussion of the medical evidence. Regarding plaintiff's physical RFC, the ALJ considered the January 2011 MRI of plaintiff's lumbar spine, a 2008 MRI of plaintiff's thoracic spine, and multiple clinical signs and findings, including exam reports which indicated plaintiff exhibited a normal steady gait, full strength in her legs and arms, and a normal range of motion. Furthermore, the ALJ noted plaintiff's own previous denials that she experienced decreased range of motion, bone or joint paint or tenderness, or muscle weakness. (Tr. 15-19.)

The ALJ also provided sufficient medical record support for plaintiff's mental RFC determination. The ALJ noted Jesse C. Rhoads', D.O., determination that plaintiff's thoughts were logical, linear and goal directed, that her attention and concentration were good, and that her memory was intact. (Tr. 17.) The ALJ also discussed plaintiff's examination by Richard C. Lucas, M.D., in which Dr. Lucas noted that claimant was

cooperative and focused, her thoughts were clear and coherent, and she was generally stable with only mild continued mood symptoms. (Tr. 17-18.) Furthermore, the ALJ pointed to plaintiff's statements during a medication management session in April 2012 that she was doing "fairly well" on her prescribed medications. (Tr. 17.) The ALJ discussed plaintiff's GAF scores, which demonstrated only mild to moderate symptoms (Tr. 19), and the opinion of James Morgan, Ph.D., a State agency psychologist, who stated that plaintiff is capable of performing one to two step jobs. (Id.)

Furthermore, while a claimant's RFC is a medical question, an ALJ is not limited to considering medical evidence exclusively. Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2000). In this case, the ALJ also properly considered plaintiff's sparse work history, her inconsistent statements regarding her drug abuse, her day-to-day activities, and evidence of her drug seeking behavior. (Tr. 15-19.)

In his decision, the ALJ discussed the relevant medical and nonmedical evidence (Id.), why he believed it contradicted plaintiff's allegations of disabling impairment (Tr. 16-19), and explained how he determined plaintiff's physical and mental RFC assessments (Tr. 17-19). The ALJ did not, as plaintiff claims, fail to provide a link between the medical evidence and the resulting RFC.

**B. Determination of RFC**

Plaintiff argues the ALJ erred by not finding a more limited RFC. The ALJ determined plaintiff was limited to sedentary work, could only occasionally lift and carry ten pounds, and could only stand and walk for two hours in an eight hour workday. Plaintiff argues that the ALJ failed to adequately consider her testimony at the ALJ hearing, as well as her history and complaints of degenerative disc disease, obesity, seizure disorder, fibromyalgia, Graves' disease, hypertension, hypoglycemia, headaches, hepatitis C, and rheumatoid arthritis. Although the ALJ found she was limited to sedentary work, plaintiff argues she should be precluded from all full-time employment.

Plaintiff testified at the ALJ hearing that she could stand for only fifteen minutes at a time due to her pain, and that she went shopping only with her mother due to her social anxiety. However, the ALJ found plaintiff's allegations were inconsistent with the objective medical evidence. (Tr. 16.) The Eighth Circuit has held that "ALJs must seriously consider a claimant's testimony about pain, even when it is wholly subjective. But questions of credibility are for the [ALJ] in the first instance. If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment." Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).

The ALJ cited numerous medical records and statements made by plaintiff that contradicted her testimony at the hearing, and he also considered plaintiff's lack of serious treatment as well as evidence of her dishonest behavior. (Tr. 16-17.) The ALJ explicitly discredited plaintiff's testimony and gave good reasons for doing so.

There was sufficient evidence to support the ALJ's RFC determination, and he did not err when he declined to afford plaintiff's testimony significant weight.

## C. Development of Record

Plaintiff argues the ALJ failed to afford her a full and fair hearing because additional medical evidence was required in order to reach an RFC. Plaintiff asserts that no medical opinion evidence existed in which to form the physical RFC, and therefore the ALJ had a duty to seek additional medical examinations of her physical impairments.

Plaintiff is correct in that the ALJ "bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (citing Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). The ALJ must develop a complete medical history, including arranging for a consultative exam if necessary. 20 C.F.R § 416.945(a)(3). However, "[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is

disabled." <u>Johnson v. Astrue</u>, 627 F.3d 316, 320 (8th Cir. 2010) (citing <u>Barrett v. Shalala</u>, 38 F.3d 1019, 1023 (8th Cir. 1994)).

In this case, the evidentiary record was adequate to allow for a proper evaluation of the claim without a consultative medical exam. As discussed above, the ALJ based his decision on objective medical records, medical opinions from multiple doctors, and other medical and non-medical sources. The ALJ fairly and fully developed the record, and no additional evidence was required in order to reach plaintiff's RFC.

## D. HALLEX Compliance

Plaintiff argues that the ALJ failed to meet HALLEX I-2-6-58 requirements when he did not consider relevant records contained in plaintiff's prior case. The Hearing, Appeals, and Litigation Law (HALLEX) manual guideline provides procedural guidance for processing and adjudicating claims at the ALJ hearing and Appeals Council levels. HALLEX I-2-6-58 provides that an ALJ will admit into the record any evidence he determines is material to the issues before him. (<u>See</u> HALLEX I-2-6-58(A).) Plaintiff asserts the missing records confirm that she has an anxiety disorder. The records that plaintiff is referring to are dated October 10, 2008 through January 22, 2009, which is more than two years before her protective filing date of June 29, 2011. At the hearing before the ALJ, plaintiff and her counsel were informed of the evidence in the record (Tr. 36), and could have submitted the records from the previous denial, but failed to do so. Plaintiff also failed to raise the issue before the Appeals Council.  However, plaintiff now argues that the ALJ's failure to explain why the previous records were not made part of the record requires a remand.

The Eighth Circuit has not expressly ruled on the legal effect of HALLEX, and there is a split in the circuits about the issue.  The Fifth Circuit has held that HALLEX is binding to the extent that violations of it can be grounds for granting relief. <u>Newton v. Apfel</u>, 209 F.3d 448, 459 (5th Cir. 2000) (ruling that, while HALLEX provisions do not carry the authority of law, a violation of them can be a basis for relief if prejudice results).

The Ninth Circuit has held that HALLEX has no legal force and is simply an internal manual that is not binding on the Commissioner or the courts. Moor v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000). The Third Circuit has also found that HALLEX lacks the force of law and creates no judicially enforceable right. Bordes v. Comm'r, 235 Fed. Appx. 853, 859 (3d Cir. 2007).

Courts in this District have expressly considered the effect of a violation of HALLEX. The Honorable Audrey Fleissig held "[t]he Eighth Circuit would hold that HALLEX does not have the force of law." Ellis v. Astrue, No. 4:07CV1031 AGF, 2008 WL 4449452, at *16 (E.D. Mo. Sept. 25, 2008) (citing Shontos v. Barnhart, 328 F.3d 418, 424 n.7 (8th Cir. 2003)). In another case involving an alleged HALLEX violation, the Honorable Terry Adelman held that "[e]ven if the ALJ [violated HALLEX], the [violation] would be harmless error. Remand is only necessary where the ALJ's error jeopardizes the existence of substantial evidence to support the ALJ's decision, or where the ALJ applies the wrong legal standard." Lovett v. Astrue, No. 4:11CV1271 RWS, 2012 WL 3064272, at *11 (E.D. Mo. July 6, 2012), report and recommendation adopted, 2012 WL 3062803 (E.D. Mo. July 27, 2012).

In this case, plaintiff has not put forth a compelling argument that the ALJ's alleged error jeopardized the existence of substantial evidence to support his decision. Plaintiff argues that the records, the latest of which is dated February 3, 2009, demonstrate that she had been diagnosed with an anxiety disorder. However, there was already evidence in the record to demonstrate this diagnosis (Tr. 283; 480), including the fact that plaintiff had been prescribed Xanax by Dr. Henry Kalir for her anxiety on March 29, 2011 (Tr. 283), and Dr. Rains' assessment on June 6, 2012 that plaintiff had chronic anxiety. (Tr. 480.)

Assuming, without so holding, the ALJ violated HALLEX, the violation did not result in prejudice sufficient to warrant a remand. The content of the omitted records is found in the existing record, and plaintiff and her counsel had ample opportunity to submit the previous records.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

_____/S/   David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 9, 2014.